PEDERSEN, Administrator, Appellant, vs. NIELSEN, Respondent.

*September 14—October 10, 1933.*

The cause was submitted for the appellant on the briefs of *Morris E. Yager* of Frederic, and for the respondent on that of *V. W. Nehs* of Neillsville.

OWEN, J. The question raised upon this appeal is whether the premises described in the petition constitute the homestead of the petitioner, Glyde B. Nielsen, and are, therefore, exempt from the judgment of the appellant. Briefly stated, the facts found by the court are: that the petitioner is the widow of Dr. C. S. Nielsen, who died a resident of Withee, in Clark county, on the 8th day of December, 1923, leaving the property described in the petition, title to which is now in the petitioner. The petitioner was left in the most impecunious circumstances, with one son to support.

In September, 1924, Mrs. Nielsen entered the University of Wisconsin, and spent one year taking a course to qualify as a librarian. In July, 1925, Mrs. Nielsen secured a position in the public library of Eau Claire at an annual salary of $1,440. She remained in this position for three years, receiving a salary of $1,600 during her last year. For the first two years after her husband's death her son remained with his uncle at Withee and attended high school. During the last two years of her service at the Eau Claire library she and her son rented rooms for light housekeeping, her son attending the Eau Claire normal school. At the expiration of this period, her son being desirous of obtaining an engineering course, which could be had only at some uni-

versity, Mrs. Nielsen made application for a position as librarian at Madison and at Minneapolis. Her application at Minneapolis was accepted.

On July 1, 1928, Mrs. Nielsen moved to Minneapolis and entered upon her position as librarian at the Minneapolis library at a salary of $1,600. She still holds the position at the same salary. Her son accompanied her to Minneapolis and entered the University of Minnesota, from which he has since graduated, and since September, 1931, he has been in the employ of the Standard Foods Company. Upon arriving at Minneapolis Mrs. Nielsen rented a flat and moved nearly all of her household furniture from Withee, where it had been stored in a building on the premises sought to be declared her homestead. Since moving to Minneapolis she has attended the summer sessions of the University of Minnesota, has taken correspondence work at the University of Wisconsin, and is now taking work in the extension division of the University of Minnesota with a view of securing a degree as a librarian, so that, after receiving such a degree, she will be qualified for a better position in library work. It is her present intention to continue to remain in Minneapolis at her present work as a librarian, helping and supporting her son and enabling him to attend the University of Minnesota so that he may secure both a master's and a doctor's degree, and then to still remain there until he has established himself so he can earn a livelihood, and to still further continue in her library work until she has earned enough money to pay her debts, amounting to some $4,500, and to also lay aside a competency for old age. After this, according to the finding of the court, it has been her aim and intention to return and spend the rest of her life in her homestead at Withee. During her stay in Minneapolis she has exercised the right of suffrage and voted at least at one election.

Notwithstanding the foregoing, the circuit court found that she is a resident of the state of Wisconsin and always has been, and that it has always been her intention, when she had educated her son and paid her debts, to come back and spend the remainder of her life in her homestead at Withee, where her husband died; and as a conclusion of law found that her property at Withee, mentioned in her petition, constituted her homestead, and was not subject to execution and sale upon appellant's judgment.

There can be no doubt that prior to the time the petitioner left Withee the premises mentioned in her petition constituted her homestead under sec. 272.20, Stats., and that section provides that "such exemption shall not be impaired by temporary removal with the intention to reoccupy the same as a homestead." This exemption is enjoyed, however, only by those who are residents of this state. It appears that Mrs. Nielsen has not occupied these premises as her homestead since July, 1925. Her absence from Withee is for the purpose of earning a livelihood in her chosen profession as a librarian. So long as she pursues this profession it will be necessary for her to be absent from Withee, as it is conceded that Withee affords no employment for persons in that profession. She has already been absent eight years, and frankly states that she expects to be absent long enough to enable her son to secure both a master's and a doctor's degree at the university and to earn money to pay her debts, amounting to $4,500, and, in addition, a competency for her old age. It therefore appears that she is absent from Withee in the pursuit practically of her life's work. Although she testifies to a present intention of returning to Withee and occupying these premises as her homestead when she has accomplished these rather ambitious purposes, it is impossible for her to be at all definite as to the time when she will or can return. Since July 1, 1928, she has been engaged

in public service in another state and has exercised the right of suffrage there.

While it was held by this court in *Minnesota Stoneware Co. v. McCrossen,* 110 Wis. 316, 85 N. W. 1019, that the act of voting in another state did not conclusively negative the temporary absence of a person from his homestead in this state, nor conclusively establish his loss of citizenship in this state, it is nevertheless a most significant fact to be taken in consideration in connection with all the other facts in the case to indicate the intention with which Mrs. Nielsen abandoned her homestead. It has been held that the words "temporary removal" as used in this statute mean "a fixed and temporary purpose, or for a temporary reason, and that in order to prevent an abandonment by such removal it must be made with the certain and abiding intention of returning to the premises and residing therein as a homestead." *Moore v. Smead,* 89 Wis. 558, 62 N. W. 426. "A vague intention to return at some future day and reside there will not preserve the homestead." *Jarvais v. Moe,* 38 Wis. 440. This case is ruled by *Blackburn v. Lake Shore Traffic Co.* 90 Wis. 362, 63 N. W. 289, where it was said:

"When he made the removal, the presumption was that he did so *animo manendi.* 1 Kent, Comm. 76. The presumption might be rebutted by circumstances and conditions surrounding the removal, or declarations accompanying it, manifesting a temporary purpose and an intention to return; but not satisfactorily by *ex post facto* professions, after intervening occurrences had made return advantageous. The intention which is sufficient to rebut the presumption must be positive and certain, not conditional or indefinite."

It is quite plain that the petitioner's own testimony negatives the character of the removal which is permitted with a continuation of homestead rights. She did not leave the homestead for a temporary and definite purpose. She left it for a lifelong purpose and took up her abode in places

where she could secure employment in her profession. There are no prospects for her return in the near future. On the contrary, even at this time her conceded purposes will require her absence for a long and indefinite period. We recognize the rule that the finding of the trial court concerning the character of her absence should not be disturbed unless it is against the great weight and clear preponderance of the evidence, but it is difficult to see how the property in question can continue to retain its character as her homestead and to give any weight at all to the provisions of the statute which limits the homestead exemption to residents of this state during such removals only as are temporary in character.

We join the trial court in expressing commendation of the valiant efforts of the petitioner to meet and discharge the obligation imposed upon her by the untimely death of her husband. Were we at liberty to follow our natural instincts and sympathies rather than the law, we might reach a different conclusion. To hold otherwise would render it difficult to visualize a situation where continued, protracted, indefinite absence, accompanied by the exercise of the rights of citizenship in another state, could be held to constitute an abandonment.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment denying the relief prayed for in the petition.