In re Daniel A. FINK, Debtor.

No. 09–23299.

United States Bankruptcy Court,
E.D. Wisconsin.

Oct. 27, 2009.

Michelle A. Angell, Steinhilber, Swanson, Mares, et al., Oshkosh, WI, for Debtor.

## MEMORANDUM DECISION ON TRUSTEE'S OBJECTION TO EXEMPTION

MARGARET DEE McGARITY, Chief Judge.

This matter came before the Court on the chapter 7 trustee's objection to the debtor's claim of $20,200 as a homestead exemption. The debtor opposed the objection and the parties filed briefs explaining their respective positions. This a core proceeding under 28 U.S.C. § 157(b)(2)(B), and the Court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bank. P. 7052.

## BACKGROUND

On March 19, 2009, Daniel A. Fink filed for chapter 7 bankruptcy. On his schedules he listed the following property exempt under 11 U.S.C. §§ 522(d)(1) and (d)(5) [1]:

Homestead located at N10570 Center Dr., Lomira WI 53048. This property was subject to division in the debtor's 2000 divorce from [Mrs.] Fink. Debtor received a mortgage on the home in the amount of $25,000 to be paid on or before February 20, 2011. Simple interest of 2% annually accrues until it is paid in full. Debtor has not yet received payment.

(Schedule C—Property Claimed as Exempt, filed March 19, 2009).

Prior to their divorce, the debtor and his former spouse had jointly owned and lived in the subject house in Lomira, Wisconsin, since 1992. In February 2001, the Finks entered into an agreement in partial settlement of their divorce proceedings, whereby the debtor was awarded a "[c]ash balancing payment of $25,000 to be received from [his former spouse] on or before February 20, 2011." It was also agreed that a promissory note and mortgage would secure the payment, with the accrual of simple interest at 2% annually. (Partial Final Stipulation dated February 20, 2001, p. 8, Dodge County Circuit Court Case No. 00FA265).

His former spouse, in turn, was awarded "all right, title, and interest in the parties' residence," subject to the mortgages owed to the bank and the debtor. The debtor was "divested of all right, title, and interest therein." (Partial Final Stipulation dated February 20, 2001, p. 9, Dodge County Circuit Court Case No. 00–FA–265).

The stipulation was incorporated into the Dodge County Circuit Court's Memorandum and Order which, among other things, provided that the debtor's former spouse was "permitted to continue to reside in the marital residence with $25,000.00 of Mr. Fink's equity remaining invested in the marital residence." (Memorandum and Order dated March 1, 2001, p. 2, Dodge County Circuit Court Case No. 00–FA–265).

Pursuant to the Judgment of Divorce, the debtor quit claimed to his former spouse the Lomira residence. (Quit Claim Deed recorded March 19, 2001, Dodge County). On July 27, 2001, the debtor's former spouse executed a mortgage on the residence to the debtor in the amount of $25,000. The deed, apparently drafted by the attorney for the debtor's former spouse, states, "This is not homestead property."

## ARGUMENTS

The debtor argues he has retained his homestead exemption and the ruling in *In re Nabbefeld*, 76 B.R. 132 (Bankr.E.D.Wis. 1987), is precisely on point. In that case, the debtor had divorced and received a $15,250 lien on the homestead payable upon specific circumstances, and his former spouse received title to the home. Citing Wisconsin law, the bankruptcy court concluded that persons who were involuntarily removed from their homesteads do not lose their homestead rights in property. *Id.* at 134. As the intent of the debtor is relevant, the debtor points out that he did not choose to leave his homestead and had planned to spend the rest of his life living there with his family. However, due to circumstances beyond his control he was forced out of the home. He

1. $20,200.00 was claimed exempt under section 522(d)(1) and $4,800.00 was claimed exempt under section 522(d)(5). The trustee did not oppose the wild card exemption.

further argues he has not established a new permanent home and, due to his ongoing substantial child support obligations, he is unable to save money to purchase a home on his own. His brief states, "He intends to use the funds he would receive from the sale of the home or cash payout from his former wife to establish a new home for himself."

The trustee, on the other hand, argues *Nabbefeld* is distinguishable from the facts in this case; namely, the length of time between this debtor's relinquishment of his interest in the marital homestead and his attempt to claim the homestead exemption in bankruptcy. The debtor in *Nabbefeld* vacated the marital residence approximately eleven months prior to filing for bankruptcy protection, whereas in this case the debtor quit claimed his interest in the residence to his former spouse more than eight years prior to filing his case.

## DISCUSSION

■ Bankruptcy Rule 4003(c) places the burden of proving that an exemption has been improperly claimed on the party objecting to the exemption. Additionally, exemption statutes are to be liberally construed in favor of the debtor. *See Matter of Geise*, 992 F.2d 651, 656 (7th Cir.1993).

In Wisconsin, a bankruptcy debtor may remove from the estate property claimed as exempt under state law or under 11 U.S.C. § 522(d). 11 U.S.C. § 522(b)(1). Pursuant to section 522(d)(1), a debtor may exempt "[t]he debtor's aggregate interest, not to exceed $20,200 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence." 11 U.S.C. § 522(d)(1). The question we must resolve is whether the debtor's lien interest in his former spouse's residence, which arose out of the marriage dissolution decree, qualifies as an aggregate interest in real or personal property that the debtor or a dependent of the debtor uses as a residence.

*Homestead Exemption under Section 522(d)(1) of the Bankruptcy Code.*

Wisconsin has not "opted-out" of the exemptions set forth in the Bankruptcy Code, thereby allowing its residents to elect the federal exemptions. Since the debtor claimed an exemption under section 522(d)(1), this Court must first examine whether or not the debtor's lien fits under the Bankruptcy Code exemption. The cases cited by the parties—and the majority of written decisions regarding the homestead exemption—analyze and apply state law definitions of homestead.

■ In fact, there are differing opinions on whether or not courts should refer to state law to interpret section 522(d)(1). *Compare In re Gandy*, 327 B.R. 807, 808–09 (Bankr.S.D.Tex.2005) (concluding plain language of statute negated any justification to resort to state law), *with In re Brown*, 299 B.R. 425, 428 (Bankr.N.D.Tex. 2003) (holding, for purposes of section 522(d)(1), the terms "residence" and "homestead" are interchangeable; and a homestead, as a property interest, is defined by state law). As noted by one court, the statutory language of section 522(d)(1) is free of ambiguity and plain in its meaning: the debtor must be residing in the property at the time of the commencement of the bankruptcy case. *In re Boward*, 334 B.R. 350 (Bankr.D.Mass. 2005); *In re Gandy*, 327 B.R. 807 (Bankr. S.D.Tex.2005). However, the federal exemption statute allows, in the alternative, property that "a dependent of the debtor uses as a residence." 11 U.S.C. § 522(d)(1). It is undisputed that two of the debtor's children are still minors and continue to reside in the subject property, and he pays child support, thus making them his dependents. The trial court also

awarded him dependency tax exemptions on all of the children. (Memorandum and Order dated March 1, 2001, p. 5). Thus, for federal homestead exemption purposes, the residency requirement is met.

 Unfortunately, the Code does not define the term "aggregate interest." The Bankruptcy Code defines "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). Because the Code does not provide any guidance as to whether a lien arising from a mortgage granted pursuant to a dissolution decree is a mere charge against property or, instead, an interest in property that would constitute an "aggregate interest," we again turn to state law for guidance. *See Barnhill v. Johnson,* 503 U.S. 393, 397–98, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."); *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law."); *see, e.g., In re Brannon,* 476 F.3d 170, 176 (3d Cir.2007) (debtor's aggregate interest in tenancy by the entireties property determined by Pennsylvania law); *In re Czerneski,* 330 B.R. 240, 242 (Bankr.E.D.Wis.2005) (debtor's aggregate interest in non-filing spouse's individual property determined by Wisconsin law). Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

Under Wisconsin law, a lien is "a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or proceedings, a common-law lien or a statutory lien." Wis. Stat. § 242.01(8). The question is: Does Wisconsin's definition of "lien" encompass an "aggregate interest . . . in real property or personal property that the debtor or a dependent of the debtor uses as a residence?"

Under similar facts, the Eighth Circuit has held that a debtor's lien interest could not be claimed as exempt under the Code. *In re Johnson,* 375 F.3d 668 (8th Cir.2004). In that case, the parties' property settlement awarded the debtor's former spouse all right, title and interest in the homestead, subject to a lien in favor of the debtor. Both the debtor's former spouse and their minor child lived in the home secured by the lien, although the extent of the debtor's support of either was not discussed. The court held that the debtor's lien was a personal property interest under Minnesota law, and neither the debtor nor his dependent used the lien, presumably as distinguished from the property itself, as a residence. The debtor had no ownership or possessory interest in the residence, and his "mere collateral interest in the residence" did not rise to the level of a homestead right under section 522(d)(1). *Id.* at 670.

On the other hand, another court held that section 522(d)(1)'s requirement of an "aggregate interest" in the property does not necessarily require that the debtor have title interest in the property. *Hoffman & Schreiber v. Medina,* 224 B.R. 556, 559 (D.N.J.1998). In *Medina,* the debtor was allowed to claim an exemption under the Code in an account receivable representing a one-third interest in her marital home, of which her former spouse held title. Distinguishable from the case at hand, however, the debtor in *Medina* remained in the home, and thus retained a possessory interest in the home. *Cf. In re Buick,* 237 B.R. 607 (Bankr.W.D.Pa.1999) (exemption allowed; debtor was removed

from property pre-petition due to marital discord but it qualified as his homestead, and he retained title until property was sold post-petition).

In this case, the debtor has neither an ownership nor a possessory interest in the residence at filing. *See Glover v. Marine Bank of Beaver Dam,* 117 Wis.2d 684, 691–92, 345 N.W.2d 449 (1984) ("Wisconsin is a state which follows the lien theory of mortgages. In other words, the mortgagee does not have legal title in the mortgaged premises. The mortgagor retains full ownership in the property, which consists of equitable and legal title, while the mortgagee's interest is that of a lien holder. Therefore, the mortgagee's status is that of a holder of a security interest."). The applicable law and facts are indistinguishable from *Johnson,* and the Eighth Circuit's reasoning is persuasive. Therefore, the debtor's lien interest in his former homestead does not qualify as an interest subject to the homestead exemption under federal law.

*Homestead Exemption under Section 815.20, Wis. Stat.*

■ The parties' arguments seek relief primarily on state homestead law analyses. Because Rule 1009(a) of the Federal Rules of Bankruptcy Procedure permits liberal amendment of exemption schedules at anytime before a case is closed, this Court believes it is prudent to examine the issue under the state homestead exemption statute, as well. *See also In re Boward,* 334 B.R. 350 (Bankr.D.Mass.2005) (determination that debtor was not entitled to "homestead" exemption available under Code was without prejudice to debtor's right to amend her schedules to claim homestead exemption under state law).

■■ Wisconsin law provides that an exempt homestead is exempt from execution to the amount of $40,000. Wis. Stat.

§ 815.20. The statute itself expressly provides:

An exempt homestead ... selected by a resident owner and occupied by him or her shall be exempt from execution ... to the amount of $40,000, ... except as otherwise provided. The exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale of the homestead, but shall extend to the proceeds derived from the sale to an amount not exceeding $40,000, while held, with the intention to procure another homestead with the proceeds, for 2 years.

Wis. Stat. § 815.20(1). There is a strong public policy in Wisconsin to protect the homestead exemption. *Weber v. Weber,* 176 Wis.2d 1085, 1095–96, 501 N.W.2d 413, 417–18 (1993). "Because of this public policy, homestead statutes are liberally construed in favor of the debtor, and homestead rights are preferred over the rights of creditors." *Schwanz v. Teper,* 66 Wis.2d 157, 163, 223 N.W.2d 896, 899 (1974) (citations omitted).

■ The parties agree that a debtor can claim a homestead exemption in property he cannot occupy because of marital discord or a pending divorce. *Matter of Neis,* 723 F.2d 584 (7th Cir.1983); *In re Nabbefeld,* 76 B.R. 132 (Bankr.E.D.Wis. 1987); *In re Lumb,* 12 B.R. 862 (Bankr. E.D.Wis.1981). The issue here is for how long the debtor retains that right, especially when title transfers prepetition. The Wisconsin statute itself limits the application of the exemption to proceeds from the sale of the homestead to two years. Depending on how the statute is grammatically construed, it may or may not also limit the temporary removal exception to two years.

■ While a debtor's assertion of a homestead exemption generally establishes

a presumption that the property is homestead property, this presumption is rebutted when the owner claiming the homestead exemption does not occupy the premises. *Moore v. Krueger,* 179 Wis.2d 449, 459, 507 N.W.2d 155, 159 (Ct.App. 1993). So the burden is on the debtor to show that he intended to return to the premises or to apply the lien proceeds to procure a new homestead when the original is sold. *Id.* (citing *Jarvais v. Moe,* 38 Wis. 440, 446 (1875)).

■ In *Matter of Neis,* 723 F.2d 584 (7th Cir.1983), the debtor left his family home due to marital difficulties. After his removal, his wife obtained a temporary order requiring the debtor to vacate the residence he had already left. By a stipulation included in the ultimate divorce decree, the wife was to occupy the homestead pending its sale, and the proceeds were to be divided. The debtor briefly reoccupied the premises after his wife left. He then filed his bankruptcy petition, and the house was sold soon after. During his period of removal from the homestead, several judgment liens were docketed against him. Regarding the Wisconsin homestead exemption, the Seventh Circuit said:

> The statute thus requires that an owner be a resident-occupant of the property claimed as a homestead subject to two exceptions: (1) when the owner is temporarily absent with an intent to return and (2) when the house is to be sold with the proceeds intended for the purchase of another homestead. Thus, with respect to these exceptions, the owner's intent is crucial to a determination of qualification for the homestead exemption.

*Id.* at 587. The question of the debtor's intent to abandon or create a homestead is a question of fact, or of inference to be drawn from facts. *Id.* at 589. Here, the

debtor asserts he intends to establish a new homestead when his lien is paid, and for the purposes of this argument, we will accept that is how he would testify.

In the primary case cited by the parties, *In re Nabbefeld,* 76 B.R. 132 (Bankr. E.D.Wis.1987), the court concluded the debtor could claim the homestead exemption with respect to his interest in the former marital home, even though, following a divorce, the debtor no longer resided in the home and had only a lien interest in the property. Notably, the debtor filed his bankruptcy case less than two years after the divorce proceedings were initiated.

Likewise, in *In re Lumb,* 12 B.R. 862 (Bankr.E.D.Wis.1981), the court found the debtor's right to claim a homestead exemption as an owner-occupant of his former residential property was not lost by his compliance with the family court's order to leave the home. The debtor also filed bankruptcy within two years of leaving the residence. *See also Matter of Gullickson,* 39 B.R. 922 (Bankr.W.D.Wis.1984) (debtor, who left his home due to marital troubles and was ultimately prevented from returning by court order sought by his wife in divorce proceedings, and who quit claimed his interest in the property to his wife and received a mortgage and note in return less than two years prior to filing bankruptcy, was entitled to claim his "mortgage interest" as exempt homestead).

Courts have also found several other factors influencing whether or not the debtor's removal constituted abandonment of the homestead. For instance, in finding a debtor had abandoned the homestead by purchasing another home, the Wisconsin Supreme Court noted "[h]omestead rights are purely statutory; the owner has no greater right than the statute allows." *Plan Credit Corp. v. Swinging Singles, Inc.,* 54 Wis.2d 146, 150, 194 N.W.2d 822,

825 (1972). In that case, the debtor had not yet sold the home he claimed a homestead interest in, but apparently intended to do so, using the proceeds to repay a loan which enabled him to purchase the home he was living in. The court rejected the debtor's argument that the exemption statute should be construed to exempt for two years a house which was formerly the homestead of a debtor, but which had been abandoned by him because such construction would be contrary to the rule that a person can have but one homestead at a time. Here, Mr. Fink does not have another homestead.

In another case, the state supreme court recognized a limit to the temporary removal exception, and concluded that a vague intention of returning at some future day will not preserve the homestead exemption. *Pedersen v. Nielsen,* 212 Wis. 608, 250 N.W. 400 (1933). In *Pedersen,* the debtor was employed away from her former homestead *for eight years.* She had the stated intention to eventually return to her former homestead, but her time away was for an "indefinite" period. In denying the debtor a continuation of homestead rights, the court noted there were no prospects for her return to the claimed homestead in the near future. "To hold otherwise," the court found, "would render it difficult to visualize a situation where continued, protracted, indefinite absence, accompanied by the exercise of the rights of citizenship [elsewhere], could be held to constitute an abandonment." *Id.* at 612, 250 N.W. at 402; *see also Jarvais v. Moe,* 38 Wis. 440 (1875) (intention to return must not be conditional or indefinite).

Cases analyzing the debtor's intent to claim property as a homestead in the future generally look to some overt act by the debtor evidencing his intent, not merely a stated intention. *Cf. In re Arndt's Estate,* 199 Wis. 1, 225 N.W. 134 (1929) ("While the statutory provisions for homestead exemption have been and should be very liberally construed, yet in a situation such as was here presented there was lacking the prime requisite of a showing of some overt act indicating a then present intention to set aside the particular property as and for a homestead, in addition to a showing of a merely mental attitude to the same purpose."); *In re Robers,* 220 Wis. 547, 551, 265 N.W. 578, 580 (1936) (finding "something more overt than a subsequent mere hope or vague intention on" the part of a homestead exemption claimant to use his property as his homestead at some future time is "necessary in order to exempt it from the liens of judgments docketed in the meantime").

There is no need for an evidentiary hearing when a debtor's testimony or declarations on the issue of intent to return will not be determinative, provided the statement concerning intent is contradicted by the debtor's actions. *See In re Bradshaw,* 125 B.R. 782, 786 (Bankr. E.D.Wis.1991); *Hauser v. Schauer,* 215 Wis. 75, 254 N.W. 343, 344 (1934). Mr. Fink's actions, or lack thereof, in establishing a homestead in the future neither support nor refute any intent whatsoever. In his brief, he states he has been unable to establish another homestead due to low income and large child support payments. Until the lien becomes due in 2011, he is renting an apartment "with a hopeful eye to the future."

The trustee also noted that the following provision appears on the face of the quit claim deed transferring the property solely to the debtor's former spouse: "This is not homestead property." The deed was not drafted by the debtor or his attorney, but he did sign it, presumably while he was represented by counsel. The trustee argues this is conclusive as to his intent. This language is required in Wisconsin

land contracts and indicates the status of the property as to the contract seller.

As noted by the appellate court in *Master Lock Credit Union v. Rayford,* 119 Wis.2d 301, 304, 349 N.W.2d 737, 739 (Ct. App.1984), "homestead rights can rise no higher than ownership rights." Case law has expanded the right of a "resident owner" to claim a homestead exemption when the debtor is temporarily residing elsewhere under certain circumstances. The statute further extends the debtor's right to "proceeds derived from the sale … while held, with the intention to procure another homestead with the proceeds, for 2 years." Wis. Stat. § 815.20(1). No court has expanded this reinvestment period. Both *Matter of Gullickson,* 39 B.R. 922 (Bankr.W.D.Wis.1984), and *In re White,* 727 F.2d 884 (9th Cir.1984), involved debtors who moved temporarily and had filed bankruptcy cases before the reinvestment period for homestead sale proceeds expired. Theoretically, these debtors, and also Mr. Fink, could have sold their liens to obtain cash and could have reinvested that cash in a new homestead before the exemption deadline expired. In *Gullickson,* the court focused on the reason for removal, i.e., marital discord, but reinvestment was still possible at the time the bankruptcy petition was filed. The *White* court noted that reinvestment was possible under Oregon law, the period having been tolled when the debtor was involuntarily prevented from occupying the home, although the court also held that a lien was not an exemptible interest.

Mr. Fink is not an owner, he is not a resident, the proceeds from the sale of his interest continue to be held by him in the form of a secured lien, more than two years passed pre-petition since he has had any possessory or ownership interest and without reinvestment of the proceeds of the sale of his former homestead. His lien interest cannot rise to the interest of a "resident owner" under these circumstances. Accordingly, a claim of exemption under Wisconsin law would be similarly disallowed.

A separate order sustaining the trustee's objection will be entered.